UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA PALMER,

                            Plaintiff,                          5:21-CV-574
                                                       **AMENDED COMPLAINT**

            v.                                            Jury Trial Demanded

TOWN OF MANLIUS, NEW YORK;
CHIEF OF POLICE MICHAEL CROWELL;
INVESTIGATOR JAMES GALLUP;
INVESTIGATOR DANIEL FILIP; CAPTAIN JEFFREY
SLATER; CAPTAIN KEVIN SCHAFER; OFFICER
SHAWN GWILT; TOWN SUPERVISOR EDMOND THEOBALD;
SERGEANT JOHN PAUL;  and JOHN DOE(S) and JANE DOE(S),
in their individual and official capacities as officials, officers, agents,
employees, and/or representatives of the Town of Manlius and/or
the Manlius Police Department,

                            Defendants.
_____

        Plaintiff, ANGELA PALMER, by and through her undersigned counsel, as and for a

Complaint against Defendants, TOWN OF MANLIUS, NEW YORK;  CHIEF OF POLICE

MICHAEL CROWELL; INVESTIGATOR JAMES GALLUP; INVESTIGATOR DANIEL

FILIP; CAPTAIN JEFFREY SLATER; CAPTAIN KEVIN SCHAFER; OFFICER SHAWN

GWILT; TOWN SUPERVISOR EDMOND THEOBALD; SERGEANT JOHN PAUL; and

JOHN DOE(S) and JANE DOE(S), in their individual and official capacities as officials,

officers, agents, employees, and/or representatives of the TOWN OF MANLIUS and/or the

MANLIUS POLICE DEPARTMENT, states as follows:

## INTRODUCTION

    1.  This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title

VII"); 42 U.S.C. § 1983 based on rights under the First and Fourteenth Amendments to the United States Constitution; the New York State Human Rights Law, N.Y. Exec. Law §§ 296, *et seq.* ("Human Rights Law"); the New York Civil Rights Law § 79-n; the New York Constitution; and New York State common law.

## JURISDICTION AND VENUE

2. The Court may properly exercise jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331.

3. Venue is proper in the Northern District of New York pursuant to the provisions of 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Angela Palmer is a female citizen of the United States and resident of the County of Onondaga and State of New York. She was at all times relevant herein an employee holding the position of Police Officer in the Manlius Police Department since August 26, 2007.

5. At all times relevant herein, Angela Palmer was an "Employee" of Defendants and Defendants were "Employers" of Plaintiff and/or aiders and abettors as provided for by Title VII and the Human Rights Law of the State of New York.

6. Defendant, Town of Manlius is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 301 Brooklea Drive, Fayetteville, New York 13066. At all times relevant hereto, this Defendant employed Plaintiff and the hereinbefore named individual Defendants. Defendant Town of Manlius and the Police Department are by law responsible for the wrongdoing of officers and employees of the Town of Manlius Police Department and by law responsible for the direct

participation and endorsement of the unconstitutional and unlawful customs, policies, and practices of the other Defendants. This Defendant was also aware, through its officers, legislators, and agents, of the long-standing unlawful customs, policies and practices of the other named Defendants, and deliberately and/or negligently failed to take action to correct the unlawful customs, policies and practices of the other Defendants.

7. At all times relevant to this Complaint, Defendant Michael Crowell, was the duly appointed Chief of the Defendant Town of Manlius Police Department. As such, he is the employer of Plaintiff and other named individual Defendants and responsible, among other things, for the training, supervision, discipline and conduct of the other named Defendants, who are also Plaintiff's supervisors. He is also responsible, by law, for enforcing the rules and regulations of the State of New York and Town of Manlius and for insuring that employees of the Police Department obey the laws of the State of New York and the United States. Defendants Crowell, Slater, Schafer, Theobald, and Paul, as Plaintiff's supervisors or Town officials during her employment at the Town of Manlius Police Department, had the power to make personnel decisions regarding Plaintiff's employment.

8. At all times relevant hereto, Defendants Jeffrey Slater and Kevin Schafer were Captains of the Town of Manlius Police Department.

9. At all times relevant hereto, Defendant John Paul was a Sergeant of the Town of Manlius Police Department.

10. At all times relevant hereto, Defendants James Gallup and Daniel Filip were Investigators of the Town of Manlius Police Department.

11. At all times relevant hereto, Defendant Shawn Gwilt was a Police Officer of the

Town of Manlius Police Department.

12.  At all times relevant hereto, Defendant Edmond Theobald was the duly elected Supervisor of the Town of Manlius.

13.  At all times relevant hereto, Defendant Jane and/or John Does are agents and or officials of the Town of Manlius.

14.  All of the above-named Defendants are responsible for the establishment and perpetuation of a hostile work environment and the discriminatory and retaliatory policies, customs, practices, and habits of the Manlius Police Department. Defendants also aided and abetted the unlawful conduct described herein. Each Defendant is equally responsible and legally accountable for the unlawful conduct of the others and their actions or failures to intercede and prevent the discriminatory and retaliatory conduct.

15.  During all times mentioned in this Complaint, Defendants were acting under color of law, namely, under color of the Constitution, statutes, laws, charters, ordinances, rules, regulations, customs, and usages of the State of New York and the Town of Manlius in the State of New York.

## CONDITIONS PRECEDENT

16.  On or about February 1, 2021, a Notice of Claim was duly served on Defendants in accordance with General Municipal Law § 50-e. At least 30 days has elapsed since service of such Notice of Claim and payment thereof has been refused.

17.  On or about May 4, 2020, Plaintiff filed a formal charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC complaint was cross-filed with the New York State Division of Human Rights pursuant to a

work-share agreement. Additionally, on or about April 14, 2021, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue letter to Plaintiff.

## FACTS

18.  This complaint is in all respects based upon past, continuing, and ongoing harm and injury caused by Defendants in their discriminatory and retaliatory acts and policies. Such acts and policies are illegally imposed on Plaintiff by Defendants employing and endorsing a policy which treats women as second class citizens and excludes women from certain assignments, training, positions of visibility, authority, and power, and denies or delays women assignments, training, or transfers which lead to supervisory and management opportunities while affording them to male counterparts. Further, denying women access to these assignments, training, and positions leads to lower pay and fewer benefits. Defendants hold female officers to higher standards and scrutiny while allowing male officers to evade discipline or criticism.

19.  Plaintiff is a civil service employee and a member of the Union and employees as such are protected by the contract in effect entered into by the Town of Manlius with its employees.  Such contract provides for the fair and equal treatment in matters of pay and terms of employment including discipline and sanctions for misconduct of employees without regard to gender, race, age, or other classification.  In her position as police officer, Plaintiff always performed her duties in a fully competent and professional manner and received positive evaluations during her employment.

20.  In February 2010, Plaintiff applied and was selected as a Family Services Officer.  As a Family Services Officer, Plaintiff worked in the Special Investigations Section with Officers James Gallup and Daniel Filip.

21.   Defendant Gallup has regularly made derogatory comments about females, including officers in the Manlius Police Department and is hostile and disparaging to Plaintiff.  Gallup's behavior denigrated and isolated Plaintiff and made her feel unwelcome because of her gender. Gallup created a hostile and discriminatory work environment and interfered with Plaintiff's performance and concentration, adversely affecting the terms and conditions of her employment. His behavior has been known to Defendants yet no disciplinary, corrective or remedial action has been taken against him.

22.   From the beginning of Plaintiff's work in the Special Investigations Section, Defendant Gallup would denigrate Plaintiff's job performance and abilities, spread rumors about her, withhold information, exclude and isolate Plaintiff from meetings and training, and otherwise treat her in a demeaning, disrespectful and disparate manner.  Plaintiff was the only female investigator in the Special Investigations Section.

23.   Additionally, Plaintiff's male co-workers (Gallup and Filip) would refuse to provide her coverage for "on-call" status.  Upon information and belief, male investigators provided coverage for each other.

24.   In or about January 2019, Plaintiff complained about this discriminatory treatment to her direct supervisor, Defendant Jeffrey Slater, a Lieutenant at the time, advising him *inter alia*, that she would not be treated in such a fashion if she were a man.  Subsequently, in February 2019, Plaintiff was retaliated and discriminated against by being required to participate in counseling on the pretext that she could not "handle" workplace conflict.  Gallup, who in fact had historically treated female officers in a discriminatory manner, was neither disciplined nor counseled regarding his behavior.  Instead, his behavior continued.

-6-

25.   In May 2019, Plaintiff requested that her two male co-workers (Gallup and Filip) provide coverage for her when she was scheduled for "on-call" while on leave for her Honeymoon.  Plaintiff had previously been approved to take leave from June 1 through June 9, 2019.  Neither Gallup nor Filip responded.  Plaintiff advised Defendant Slater that her co-workers did not respond to her request for coverage, and, as their supervisor, left it up to him to find coverage.

26.   On or about June 18, 2019, Plaintiff's vacation slip requesting August 5-11th off was returned with a handwritten question of Defendant Slater. Slater wanted to know who was covering Plaintiff's "on-call" during that week.  Thereafter, Plaintiff sent an e-mail to Defendants Gallup and Filip, which she copied to Defendants Crowell, Slater, and Captain Kevin Schafer, asking that she be extended the same courtesy as other officers for "on-call" coverage. Plaintiff explained that she had covered both of them for family and other commitments and should be given the same courtesy.  Plaintiff specifically noted that she sent Gallup and Filip an e-mail asking that they cover her "on-call" status and that it was ignored.  In retaliation, Gallup denigrated Plaintiff's professionalism.

27.   On or about June 19, 2019, Plaintiff then complained to Town Manager, Ann Oot about Defendant Gallup's discriminatory conduct and the Department's lack of corrective or remedial action.  Ms. Oot confirmed that Gallup's conduct violated Town Policy and that she needed to report his conduct to the Town Supervisor, Defendant Edmond Theobald and to the Town's legal counsel.

28.   On or about July 5, 2019, Plaintiff received a letter of "training" for leaving for her Honeymoon, in spite of the fact that her leave application for the time period in question was

approved.  Plaintiff was faulted for not having "on-call" coverage even though Defendants knew

that her two male co-workers were treating Plaintiff in a discriminatory manner by refusing to

cover her "on-call" responsibilities while extending that courtesy to one another.

29.  On or about July or August, 2019, Plaintiff was advised by Ms. Oot that Town

Attorney Brunetti would be looking into her complaint and that Defendant Crowell would be

notified of his inquiry.  When Attorney Brunetti contacted Plaintiff, however, he quickly

dismissed her complaints, declaring to her, before any true or completed investigation, that there

were no laws that were violated. Further, he interrogated Plaintiff in a manner to protect the

interests of the Town, causing Plaintiff to be further subjected to discriminatory and retaliatory

actions and injury and harm.

30.  Plaintiff continued to be treated in a discriminatory fashion.  Gallup and Filip

continued isolating Plaintiff from meetings and training.  Plaintiff was even locked out of a closet

used for the Special Investigations Section.

31.  On or about October 2019, it was suggested by Captain Schafer (via Sgt. Paul), that

Plaintiff split her duties: half time as an investigator in the Special Investigations Section and

half time as the property room manager.  Thereafter, she understood she was relieved from her

"on-call" responsibilities in the Special Investigations Section.

32.  On December 9, 2019, Plaintiff was subjected to a disparate and discriminatory letter

of training for not logging into the department's dispatch on December 5, 2019.  Logging into the

dispatch system has not been a common practice of a Family Services Officer or employees

assigned to plain clothes positions while they are working from headquarters.  The letter also

falsely accused Plaintiff of being untruthful, on information and belief a tactic not applied to

-8-

male officers and a further example of discrimination.

33.   On December 17, 2019, Plaintiff learned that she was being set-up for disciplinary action with respect to her "on-call" responsibilities even though Plaintiff understood that the schedule indicated that she was relieved of "on-call" responsibilities in the Special Investigations Section while taking on responsibilities as the property room manager.  Plaintiff's misunderstanding was revealed when Defendant Sergeant John Paul admonished her that the updated schedule did not go into effect until 2020.  Plaintiff then met with Sgt. Paul and Defendant Captain Slater.  While she noted that she had never taken approved leave without advising a supervisor that she was unable to locate "on-call" coverage, Paul and Slater did not believe her.  Plaintiff again brought up issues with Defendant Gallup not providing on-call coverage for her.  Defendants responded by finding fault with Plaintiff.  Plaintiff expressed her feeling that she was being retaliated against for her complaints to the Town.  Captain Slater became angry, stating that it "pisses [him] off" that an officer would feel that the department would retaliate.

34.   On December 27, 2019 and December 30, 2019, at a deposition in a gender discrimination case, Defendant Crowell was questioned about Plaintiff's complaints regarding discrimination and retaliation.

35.   On December 31, 2019, Defendant Paul notified Plaintiff that she would no longer be able to adjust her schedule to bring her daughter to her physical therapy appointments.  Unless there were extenuating circumstances, adjusting hours had never previously been an issue. Since this date, on information and belief, male officers have been allowed to make adjustments to their schedules for personal reasons while Plaintiff was not.

36. On January 3, 2020, Plaintiff was contacted by Defendant Paul during a meeting she was attending with a State Police investigator on a joint investigation. He asked what she was doing and why she was there in a hostile manner. Plaintiff advised that she was working a case and noted that she reported her whereabouts to dispatch. Paul then stated that the Chief was looking for her and didn't know where she was. Immediately thereafter, Plaintiff contacted her Union representative, Defendant Shawn Gwilt, to ask for a meeting with Defendant Crowell to address this hostility by Paul.

37. On January 6, 2020, Plaintiff met with Defendant Crowell in the presence of Union representative Gwilt.  Crowell stated that supervisors reported to him that Plaintiff's performance was deficient and he had a pending internal affairs investigation on Plaintiff.  When Plaintiff attempted to explain her understanding of the "on-call" status, he stated that it didn't matter.  He "offered" that if Plaintiff accepted re-assignment to a school resource officer position, "everything" would "go away."  His demeanor toward Plaintiff was disrespectful, cold, and hostile. Plaintiff did not accept the "offer" at that time.

38. On January 8, 2020, Defendant Paul advised Plaintiff that she was being temporarily reassigned to the middle school.  Also on that date, Plaintiff was issued another letter of training. This letter, like the prior one, falsely accuses Plaintiff of being untruthful and was issued to fault Plaintiff and target her.

39. On or about January 10, 2020, Plaintiff advised Defendant Crowell by e-mail that she declined to accept the assignment at the middle school.  She also complained about the treatment she was experiencing.  Crowell did not respond.

40. On or about January 20, 2020, Plaintiff was advised by Defendant Paul to surrender

her laptop and department vehicle as directed by Defendant Crowell, who reportedly wanted him

to assume her investigative duties while she was assigned to the middle school.  In contrast,

Defendant Filip had been given a temporary assignment a year earlier but was allowed to keep

his equipment and

 vehicle.  Plaintiff complained about this disparate treatment to Paul that same day.

41.  On or about January 24, 2020, Plaintiff was placed on Defendant's "early warning

system."  Plaintiff was cited for five infractions that have gone unpunished for male officers.

Upon information and belief, other employees who had been placed on the "early warning

system" had more serious performance issues than that alleged against Plaintiff.  Plaintiff was

required to meet with her supervisor once a week.

42.  In February through March 2020, Plaintiff contacted the U.S. Equal Employment

Opportunity Commission (EEOC) and completed a pre-charge questionnaire.  Upon information

and belief, Defendants were notified of Plaintiff's contact with the EEOC and pending charge.

43.  On or about March 24, 2020, while off-duty and using her personal mobile phone,

Plaintiff had a private conversation with Defendant Gwilt, her union representative.  She

complained to him about the discriminatory treatment she was experiencing and discussed

"police week" held in DC which historically only male officers as coordinated by Gallup

attended. Plaintiff referred to the male officers repeatedly selected as part of a "penis club."  She

reminded Gwilt to the concern of discriminatory treatment within the Union where females had

not been given the same opportunity to attend.  Other women in the department had heard that

male officers had already made hotel reservations when it was agreed by vote women officers

would have first opportunity to attend that year, with their expenses  paid for as they had done for

male members in the past.

44.   Defendants Gallup, Paul, Gwilt, and other male officers made a complaint against Plaintiff for her exchange with Defendant Gwilt.   On or about March 31, 2020, Defendant Slater began an Internal Affairs investigation, per the request of Defendant Crowell.   Plaintiff was subjected to questioning and, on April 3, 2020, was served with a Notice of Discipline imposing a 15-day suspension without pay.

45.   The investigation and discipline of Plaintiff was discriminatory and retaliatory. Plaintiff was targeted for investigation and discipline because she is a woman complaining of discrimination.   Plaintiff learned that Defendants have maintained a secret and separate file on Plaintiff in her personnel file containing memoranda that she never knew existed.   Other Manlius officers' communications are not scrutinized as was Plaintiff's.   Further, the penalty sought was grossly excessive.   On information and belief, male officers receive no penalty or alleged "progressive discipline" for similar or more egregious conduct.   Some examples include:

a.   A male officer lied about a D.W.I. accident involving a firefighter (who the officer did not charge).   This male officer received a mere loss of vacation days;

b.   A male officer left the scene of a property accident where it was alleged he was intoxicated.   He also disobeyed a sergeant's command to return to the scene or the Police Department.   This male officer was given a two (2) week suspension.

c.   A male officer lied about an on-duty accident he got into in the City of Syracuse.   He was not disciplined.

d.   A male officer was involved in a two-vehicle crash while playing on his mobile phone, causing thousands of dollars of damage to both vehicles.   This male officer was given a mere

letter of reprimand.

46.   At Plaintiff's request, a Right to Sue letter was issued by the Department of Justice on April 14, 2021.  Thereafter, on April 23, 2021, Plaintiff was summoned to a meeting with Defendant Crowell by Sergeant Hatter, her current supervisor. Her union president, Daniel Tyrel, was present. During the meeting, Crowell raised three outdated, untrue and unsubstantiated allegations of wrongdoing, without revealing any source. The first involved Plaintiff allegedly leaving her service pistol on the front seat of a police car on an unknown date during a "Shop with a Cop" event. The last such event was held in December 2019.

47.   Second, Crowell alleged Plaintiff had caused damage to an unmarked police vehicle that was assigned to her. Again, Crowell did not specify a date, and Plaintiff had not been assigned such a vehicle in over a year and a half.

48.   The third issue addressed during Plaintiff's April 23 meeting with Chief Crowell involved a generalized allegation that she had shared information regarding an employee's background information with that employee.

49.   Crowell told Plaintiff that the source of the above allegations was a memorandum from one of his employees. He further stated that any one of the issues alleged could result in disciplinary action. Plaintiff denies any knowledge of or involvement in the alleged acts of misconduct. On information and belief, these false allegations were communicated to Crowell by one of the other named Defendants or another officer or agent of Defendant Manlius Police Department because of Plaintiff's gender and/or in retaliation for her opposition to discrimination and retaliation and to discourage and disadvantage her from pursuing legal remedies. Upon information and belief, male officers and officers who have not made complaints of

discrimination are not held to the same level of scrutiny by Defendants or made to answer

unsupported allegations of misconduct from years prior.

50.  On May 3, 2021, Plaintiff worked in her position as a School Information Resource

Officer ("SIRO") at Fayetteville Elementary School. She met with a group of third grade students

during their recess who had expressed interest in police equipment, specifically handcuffs. As

part of her duty to improve the perception of police through positive interactions, Plaintiff

engaged the students in dialogue and demonstrations of the function of handcuffs. During the

course of the demonstration, one of the cuffs malfunctioned while on a student's wrist. While the

student was able to remove her wrist from the handcuffs without issue, as a precaution Plaintiff

brought her to the school nurse who examined and cleared her to return to class. Plaintiff also

spoke with the school principal and personally contacted the student's parents who expressed no

reservations about Plaintiff's demonstration.

51.  Subsequently, Plaintiff met with Sergeant Lesperance and Officer Dashno, the

Department's defensive tactics instructors who issue handcuffs, to report the malfunction. The

cuffs were examined, the key removed, and returned to Plaintiff to be put back in use. The next

day, Defendant Filip sent a message to Plaintiff and the other SIROs requesting information

about an alleged "rumor" he had heard about a student who had to have the handcuffs "cut off."

Plaintiff explained the situation to Filip, including the fact that no one was injured and that she

had spoken with the student's parent. Later that day, Defendant Crowell–through Plaintiff's

supervisor Sergeant Hatter–requested a memorandum from Plaintiff. Hatter informed her that no

parents had complained, but the Chief had an issue with the demonstration taking place "outside"

of a classroom setting. There is no General Order or rule suggesting that interactions and

demonstrations may not be conducted during recess.

52.   Plaintiff submitted the requested memorandum to Sergeant Hatter on May 5, 2021. Thereafter, on May 11, 2021, Plaintiff received a letter of "counseling" citing numerous and exaggerated rule violations.

53.   Defendants Crowell, Gallup, Filip, Slater, Schafer, Theobald, Paul, and Jane & John Does have created and/or continued a hostile work environment and subjected women to retaliation and discriminatory and disparate treatment.  The acts that constitute and contribute to such a hostile work environment include viewing women as sexual objects or subjects of amusement. On occasions too numerous to mention male officers are known to make sexual and derogatory remarks about females and their bodies, and treat women as unworthy or beneath dignity.  These actions cause Plaintiff to be intimidated and subject to excessive scrutiny, hostile and disparate treatment so pervasive as to interfere with her work, and retaliation for reporting and complaining about that treatment.

54.   Defendants subject females to higher standards of performance and adherence to rules and regulations while excusing men from the same standards of behavior.

55.   As set forth but not limited to the above, Plaintiff was subjected to discrimination and retaliation for complaining of discrimination and a hostile work environment.  She was ostracized, ignored, and isolated.

56.   Defendants foster an atmosphere of discrimination, retaliation, hostility, and harassment based upon sexual factors.  Such treatment was and has been known to occur for years and Defendants have deliberately, recklessly,  and/or negligently participated in such acts and/or failed to cease or discourage such practices.  Despite knowledge of such practices and

treatment, Defendants have deliberately and/or recklessly failed to correct or cease such practices

nor seek elimination or solutions to said practices.

57.  Instead, Defendants have encouraged, approved, continued and expanded, concealed

and participated in such perpetuation of said hostility and illegal and unconstitutional practices to

the detriment and injury of Plaintiff.

58.  By acting as described above, Defendants acted with malice or with reckless

disregard for Plaintiff's rights, causing her to suffer harm, including but not limited to

embarrassment, humiliation, degradation, anxiety, stress, loss of pay, loss of benefits, harm to

reputation and good name, loss of enjoyment of life, insomnia, anger, family discord, headaches,

stomach upset, nervousness, loss of appetite, and pain.  Such acts by Defendants have injured

Plaintiff and subjected her to extreme emotional harm and injury and she is entitled to

compensation therefor.

## AS AND FOR A FIRST CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS
## (DISCRIMINATION BASED ON GENDER)

59.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 58 above.

60.  Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution in that she was subjected to

discrimination, including disparate treatment and a hostile work environment, because of gender.

61.  With respect to the named municipal Defendant, the actions and omissions as

aforementioned constitute municipal policy because they are the actions and omissions of final

-16-

policy making officials of the Town of Manlius.  In addition, said municipal Defendant created,

maintained and/or fostered a custom, policy or practice of discrimination thereby causing

Plaintiff injury and harm.  Finally, said municipal Defendant failed to adequately train officers

and supervisors on the rights of employees to be free from discrimination and retaliation.

62.  Plaintiff has sustained damages by reason of the Defendants' wrongful actions and

omissions.

## AS AND FOR A SECOND CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS
## (RETALIATION)

63.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 62 above.

64.  Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution in that she was subjected to

retaliation, including disparate treatment and a hostile work environment, because of her

opposition to gender discrimination and retaliation.

65.  With respect to the named municipal Defendant, the actions and omissions as

aforementioned constitute municipal policy because they are the actions and omissions of final

policy making officials of the Town of Manlius.  In addition, said municipal Defendant created,

maintained and/or fostered a custom, policy or practice of discrimination thereby causing

Plaintiff injury and harm.  Finally, said municipal Defendant failed to adequately train officers

and supervisors on the rights of employees to be free from discrimination and retaliation.

66. Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

## AS AND FOR A THIRD CAUSE OF ACTION
## PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS
## (FIRST AMENDMENT)

67. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 66 above.

68. By engaging in the foregoing conduct, Defendants violated rights guaranteed to the Plaintiff under the First Amendment to the United States Constitution in that Plaintiff was retaliated against for opposing discrimination in public employment and expression on matters of public concern.

69. Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR A FOURTH CAUSE OF ACTION
## PURSUANT TO THE NYS HUMAN RIGHTS LAW
## AGAINST ALL DEFENDANTS
## (DISCRIMINATION)

70. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 69 above.

71. Defendants violated rights guaranteed to Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was subjected to discrimination, including disparate treatment and a hostile work environment, because of gender.

72. Plaintiff has sustained damages by reason of Defendants' wrongful actions and omissions.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**PURSUANT TO THE NYS HUMAN RIGHTS LAW**
**AGAINST ALL DEFENDANTS**
**(RETALIATION)**

73.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 72 above.

74.   Defendants violated rights guaranteed to Plaintiff under the Human Rights Law of

the State of New York in that Plaintiff was retaliated against for opposing discrimination.

75.   Plaintiff has sustained damages by reason of Defendants' wrongful actions and

omissions.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**PURSUANT TO TITLE VII FOR DISCRIMINATION BASED ON GENDER**
**AGAINST DEFENDANT TOWN OF MANLIUS**

76.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 75 above.

77.   Defendants Town of Manlius and Manlius Police Department, as Plaintiff's

employers as that term is defined under Title VII of the Civil Rights Act of 1964, as amended,

violated rights guaranteed to Plaintiff under Title VII in that Plaintiff was subjected to

discrimination, including disparate treatment and a hostile work environment, in matters relating

to the terms, conditions and privileges of her employment because of her gender.

78.   Plaintiff sustained damages by reason of Defendants' unlawful actions and omissions

and is entitled to compensation therefor.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**PURSUANT TO TITLE VII FOR RETALIATION**
**AGAINST DEFENDANT TOWN OF MANLIUS**

79.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 78 above.

80.  By engaging in the foregoing conduct, Defendant employer violated rights guaranteed to the Plaintiff under Title VII in that Plaintiff was retaliated against for opposing discrimination and participating in Title VII processes.

81.  Plaintiff sustained damages by reason of the Defendant's wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## PURSUANT TO THE NEW YORK CONSTITUTION AGAINST ALL DEFENDANTS
## (DISCRIMINATION)

82.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraph 1 through 81 above.

83.  Defendants, through acts of omission or commission, violated Plaintiff's right to equal protection of the laws of the State of New York, pursuant to Article I, § 11 of the Constitution of the State of New York in that Plaintiff has been discriminated against based on gender.

84.  Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

## AS AND FOR A NINTH CAUSE OF ACTION
## PURSUANT TO THE NEW YORK CONSTITUTION AGAINST ALL DEFENDANTS
## (RETALIATION)

85.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraph 1 through 84 above.

86.  Defendants, through acts of omission or commission, violated Plaintiff's right to free

speech, pursuant to Article I, § 8 of the Constitution of the State of New York in that Plaintiff

was retaliated against for opposing discrimination in public employment and expression on

matters of public concern.

87.  Plaintiff sustained damages by reason of the Defendants' wrongful actions and

omissions and is entitled to compensation therefor.

## AS AND FOR A TENTH CAUSE OF ACTION
## PURSUANT TO NEW YORK CIVIL RIGHTS LAW
## § 79-n (DISCRIMINATION)

88.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 87 above.

89.     Defendants, through acts of omission or commission, intentionally selected

Plaintiff for harm, and caused Plaintiff injury and harm as set forth in the preceding paragraphs in

whole or in substantial part because of a belief or perception regarding Plaintiff's gender.

90.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff

suffered injury and harm as set forth herein and is entitled to compensation and punitive damages

as well as declaratory and injunctive relief.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## FOR TORTIOUS INTERFERENCE
## AGAINST DEFENDANTS CROWELL, GALLUP, FILIP,
## SLATER, SCHAFER, GWILT, THEOBALD, PAUL AND DOES

91.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 90 above.

92.  By their aforementioned actions and omissions, Defendants intentionally interfered

with Plaintiff's employment with the Town of Manlius and the Collective Bargaining Agreement

between Defendant Town and the Manlius Police Benevolent Association.

93.  As a result, Plaintiff sustained damages as aforementioned.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**FOR PRIMA FACIE TORT**
**AGAINST DEFENDANTS CROWELL, GALLUP, FILIP,**
**SLATER, SCHAFER, GWILT, THEOBALD, PAUL, AND DOES**

94.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 93 with the same force and effect as if set forth fully herein.

95.  Defendants intended to inflict harm upon the pecuniary interests of the Plaintiff by engaging in the aforementioned actions and omissions.

96.  Defendants had no legal justification or excuse to act in such manner and their actions and/or omissions were unlawful.

97.  The aforesaid acts and/or omissions of Defendants were intended to cause harm and injury to Plaintiff and, as a result, Plaintiff has suffered damages in the form of loss of wages and benefits, and is entitled to recover for those injuries and damages as previously set forth herein.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**FOR INTENTIONAL AND/OR RECKLESS INFLICTION**
**OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS CROWELL, GALLUP, FILIP,**
**SLATER, SCHAFER, GWILT, THEOBALD, PAUL AND DOES**

98.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 97 above.

99.  Defendants engaged in extreme and outrageous conduct as demonstrated by their actions set forth above.

100.  Upon information and belief, Defendants intended to cause Plaintiff severe emotional distress.  Alternatively, Defendants disregarded a substantial probability that their conduct would cause severe emotional distress.

101.  As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress for which she has sought and received medical treatment and is entitled to compensation therefor.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION
FOR BREACH OF CONTRACT AGAINST
DEFENDANT TOWN**

102.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 101 above.

103.  Pursuant to a settlement agreement in *Wolongevicz v. Town of Manlius, et al.*, U.S. District Court, Northern District of New York, Case 5:17-CV-933, the Town of Manlius Police Department was required to "implement training addressing gender discrimination, harassment, retaliation and elimination of gender bias."

104.  Pursuant to the settlement agreement, said training was supposed to be completed within the first quarter of 2021.

105.  Defendant Town of Manlius did not conduct training in accordance with said agreement.

106.  Plaintiff, as an active member of the Town of Manlius Police Department, is a third-party beneficiary to said settlement agreement.

107.  Plaintiff has been harmed as a result of Defendant Town's breach of contract.  She is a member of a protected class based on gender and has engaged in protected activity to oppose gender discrimination and retaliation in the Manlius Police Department.  As a consequence, she has suffered further discrimination, retaliation, injury, and harm as set forth more fully herein and is entitled to compensatory and punitive damages therefore.  Plaintiff also seeks an Order

enforcing the Town's agreed-upon commitment to provide training in accordance with the aforementioned settlement agreement.

**WHEREFORE**, Plaintiff seeks judgment against Defendants, jointly and severally, as follows:

a. an Order enjoining the Defendants from further violating Plaintiff's rights and providing the following injunctive relief:

1. Order Defendant Town of Manlius to provide the training agreed-to in the settlement agreement in *Wolongevicz v. Town of Manlius, et al.*

2. Order Defendants purge the Notice of Discipline served on Plaintiff on April 3, 2020, together with all attendant and subsequent documents related thereto, and restore all lost wages and benefits;

3. Require the Defendants to review and correct all unconstitutional and discriminatory treatment and conduct within the Manlius Police Department;

4. Provide equal training, opportunities, terms, benefits, and pay to female employees in the Manlius Police Department;

5. Mandate and/or enforce training and educational programs for employees about discrimination and retaliation; and

6. Require annual reports demonstrating efforts and success at compliance in providing a discrimination and retaliation-free workplace.

b. an Order enjoining the Defendants from further violating Plaintiff's rights;

c. compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

    d. punitive damages as against the individuals in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

    e. attorneys' fees, costs and disbursements of this action;

    f. declaratory relief finding that each Defendant violated Plaintiff's rights; and

    g. such other and further relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: September 15, 2021
at Blossvale, New York        s/A.J. Bosman

         _____
         A.J. Bosman, Esq.
         Robert Strum, Esq.
         Bosman Law, L.L.C.
         *Attorneys for Plaintiff*
         Office and Post Office Address
         3000 McConnellsville Road
         Blossvale, New York 13308
         Telephone: (315) 820-4417